# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VAXCEL INTERNATIONAL CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> HEATHCO LLC, AND <br> LOWE'S COMPANIES, INC., <br><br> Defendants. | Civil Action No. 1:15-cv-00696 <br><br> The Honorable John R. Blakey <br><br> Magistrate Judge Mary M. Rowland |

## DEFENDANTS' INITIAL INVALIDITY CONTENTIONS

Pursuant to Local Patent Rule ("LPR") 2.3, Defendants HeathCo LLC ("HeathCo") and Lowe's Companies, Inc. ("LCI") (together, "Defendants") hereby serve their Initial Invalidity Contentions. These Initial Invalidity Contentions are responsive to Plaintiff Vaxcel International Co. Ltd.'s ("Vaxcel" or "Plaintiff") Initial Infringement Contentions, and as such, only address the asserted claims of U.S. Patent No. 8,310,163 ("the '163 patent") identified in those Initial Infringement Contentions.

Plaintiff's Initial Infringement Contentions accuse LCI of infringement. However, as LCI has informed Plaintiff, LCI does not manufacture, use, sell, import or export the accused products in this action, and does not induce or contribute to any manufacture, use, sale, import or export of the accused products in this action. Therefore, LCI cannot be liable for infringement of the patent in suit. In addition to this fundamental defense, LCI joins in these Initial Invalidity Contentions.

Plaintiff has asserted that Defendants each infringe claims 1, 7, 9, 18 and 19 of the '163 patent ("the Asserted Claims"). Defendants deny that they infringe the Asserted Claims. In addition, each of the Asserted Claims is invalid under 35 U.S.C. §§ 101, 102, 103 and/or 112.

To the extent that Plaintiff attempts to construe the Asserted Claims of the '163 patent to cover the Accused Instrumentalities, as defined in its Initial Infringement Contentions, the Asserted Claims would be invalid on the following grounds:

The Asserted Claims are invalid under 35 U.S.C. § 101, which the Supreme Court has interpreted to bar the issuance of patents on "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). The Asserted Claims claim novelty in the fact that "the zero-crossing-point time-delay pulse lags with a time difference behind the edge of the symmetric square-wave, wherein the said time difference ranges from ($t_o$) to ($1/(2f) - t_o$), wherein $t_o = (1/2\pi f)\sin^{-1}(V_t/V_m)$, f is frequency of the AC power, $V_m$ is voltage amplitude of the AC power and $V_t$ is threshold voltage for the electric current flowing in the lighting load." (*See, e.g.*, HEATH000127.) However, the equation for $t_o$ is nothing more that the equation that calculates a time from the last zero-crossing-point to the time for any given voltage ($V_t$) along the sine wave generated by AC current. That is, $t_o$ is determined entirely by the mathematics of sine waves created by AC generators. Similarly, the claimed range is nothing more than the range along the sine wave where the voltage is greater than any given selected voltage $V_t$. Because one cannot patent a mathematical concept, the Asserted Claims of the '163 patent are invalid under § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355–56 (2014).

Based on Plaintiff's Preliminary Infringement Contentions asserting that the SH-5105-BZ infringes the Asserted Claims, claims 1, 9, 18 and 19 are invalid under §§ 102(a) and (b) based on HeathCo's public use and/or sale of the SH-5105 models ("the DualBrite Prior Art") since at least August 7, 2008 (HEATH000143). ). *Vanmoor v. Walmart Stores, Inc.*, 201 F.3d 1331 (Fed. Cir. 2000). HeathCo's public use and/or sale of the DualBrite Prior Art renders claim 7 obvious

by itself in light of the knowledge of a person skilled in the art and/or in light of U.S. Patent No. 8,598,805 ("Tremblay") (HEATH000568–78). *See* Chart 1, *infra*, which identifies where specifically in the DualBrite Prior Art each element of each Asserted Claim is found. It would have been obvious to one of ordinary skill in the art as of at least August 24, 2010 to combine the teachings of the DualBrite Prior Art with the knowledge of one skilled in the art and/or the Tremblay because they all teach similar matters in the narrow field of lighting systems and involve substituting only a limited number of elements for other elements with a predictable effect.

U.S. Patent No. 7,190,125 (filed July 15, 2004 and issued March 13, 2007) ("McDonough"), HEATH000552–67, anticipates claims 1, 9 and 18 of the '163 patent, or alternatively, renders the subject matter of claims 1, 9 and 18 obvious, and renders the remaining Asserted Claims of the '163 patent obvious by itself in light of the knowledge of a person skilled in the art and/or in light of the DualBrite Prior Art or Tremblay. *See* Chart 2, *infra*, which identifies where specifically in McDonough each element of each Asserted Claim is found. It would have been obvious to one of ordinary skill in the art as of at least August 24, 2010 to combine the teachings of McDonough with the knowledge of one skilled in the art and/or the DualBrite Prior Art and Tremblay because they all teach similar matters in the narrow field of lighting systems and involve substituting only a limited number of elements for other elements with a predictable effect.

The Asserted Claims of the '163 patent are also invalid as not enabled under 35 U.S.C. § 112(1). Each of the claims requires an input of $V_t$, the threshold voltage for the electric current flowing in the lighting load, in order to calculate the time difference range. However, the specification of the '163 patent does not disclose how to measure $V_t$ in application and would

require a technician to measure the threshold voltage and adjust the range. Accordingly, the '163 patent does not disclose how to calculate the claimed time range. As of August 24, 2010, a person of skill in the art could not determine from the specification how to use the invention without undue experimentation.

These Initial Invalidity Contentions are based upon the information presently known to Defendants. Defendants' investigation is on-going and the Court has not yet ruled on any construction of the Asserted Claims. Defendants reserve the right to alter or amend their invalidity contentions in light of further discovery, claim construction positions, court rulings and expert opinion.

| CHART 1: HEATHCO'S PRIOR SALES OF SH-5105 ("DUALBRITE PRIOR SALES") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| 1. A lighting control system using with a microcontroller, comprising: | The Heath\|Zenith Secure Home Motion Sensor Light Control, Model SH-5105 ("DualBrite Prior Art"), is a lighting system. (HEATH000316–35 (© 2008); HEATH000143; *see also* HEATH000314 at "Mask 2 IC1," which is representative of a DualBrite light sold more than one year prior to the filing date of the application that matured into the '163 patent; other product specifications and circuit diagrams for prior art versions of the DualBrite lights have been produced by Defendants and are equally applicable.) <br><br> If the claims of the '163 patent are construed either literally or under the doctrine of equivalents to cover the Accused Instrumentalities, including the SH-5105-BZ, then the DualBrite Prior Art also contains a microcontroller. The construction and operation of the DualBrite Prior Art, which is now sold as the SH-5105-BZ (as one model), has not changed in any way relevant to the claims. Thus, if the SH-5105-BZ meets this claim limitation, so too does the DualBrite Prior Art. (*See, e.g.*, HEATH000314 at "Mask 2 IC1.") |
| a lighting load; | The SH-5105-BZ was not sold with a light bulb. (*See* Defs.' Initial Non-Inf. Conts.) However, if the claims of the '163 patent are construed either literally or under the doctrine of equivalents to cover the Accused Instrumentalities, including the SH-5105-BZ, then the DualBrite Prior Art also contains a lighting load. The construction and operation of the DualBrite Prior Art, which is now sold as the SH-5105-BZ (as one model), has not changed in any way relevant to the claims. Thus, if the SH-5105-BZ meets this claim limitation, so too does the DualBrite Prior Art. (*See, e.g.*, HEATH000316, 320 (showing bulb holders and circuitry for insertion of lights bulbs up to 300 Watt maximum.)) |
| a semi-conductor switching device coupled to the lighting load and an AC power, wherein the semi-conductor switching device controls a time period for the AC power transmitting an electric power to | If the claims of the '163 patent are construed either literally or under the doctrine of equivalents to cover the Accused Instrumentalities, including the SH-5105-BZ, then the DualBrite Prior Art also contains a "a semi-conductor switching device coupled to the lighting load and an AC power, wherein the |

| CHART 1: HEATHCO'S PRIOR SALES OF SH-5105 ("DUALBRITE PRIOR SALES") | |
|---|---|
| **CLAIM LIMITATION** | **DEFENDANTS' PRELIMINARY INVALIDITY POSITION** |
| the lighting load; | semi-conductor switching device controls a time period for the AC power transmitting an electric power to the lighting load." The construction and operation of the DualBrite Prior Art, which is now sold as the SH-5105-BZ (as one model), has not changed in any way relevant to the claims. Thus, if the SH-5105-BZ meets this claim limitation, so too does the DualBrite Prior Art. (*See, e.g.*, HEATH000314 at "Q5.") |
| a zero-crossing-point detection circuit coupled to the AC power, wherein the zero-crossing-point detection circuit converts AC voltage sine-waves into symmetric square-waves, and an edge of the symmetric square-wave corresponds to a zero-crossing point of the AC voltage sine-wave; | The SH-5105-BZ does not comprise "a zero-crossing-point detection circuit coupled to the AC power, wherein the zero-crossing-point detection circuit converts AC voltage sine-waves into symmetric square-waves." (*See* Defs.' Initial Non-Inf. Conts.) However, if the claims of the '163 patent are construed either literally or under the doctrine of equivalents to cover the Accused Instrumentalities, including the SH-5105-BZ, then the DualBrite Prior Art also contains "a zero-crossing-point detection circuit coupled to the AC power, wherein the zero-crossing-point detection circuit converts AC voltage sine-waves into symmetric square-waves." The construction and operation of the DualBrite Prior Art, which is now sold as the SH-5105-BZ (as one model), has not changed in any way relevant to the claims. Thus, if the SH-5105-BZ meets this claim limitation, so too does the DualBrite Prior Art. (*See, e.g.*, HEATH000314.) |
| and a microcontroller coupled to the semi-conductor switching device and the zero-crossing-point detection circuit, wherein the microcontroller receives the symmetric square-wave and sends out a zero-crossing-point time-delay pulse to the semi-conductor switching device, | The SH-5105-BZ uses a customized ASIC rather than a microcontroller. (*See* Defs.' Initial Non-Inf. Conts.) However, if the claims of the '163 patent are construed either literally or under the doctrine of equivalents to cover the Accused Instrumentalities, including the SH-5105-BZ, then the DualBrite Prior Art also contains "a microcontroller coupled to the semi-conductor switching device and the zero-crossing-point detection circuit, wherein the microcontroller receives the symmetric square-wave and sends out a zero-crossing-point time-delay pulse to the semi-conductor switching device." The construction and operation of the DualBrite Prior Art, which is now sold as the SH-5105-BZ (as one model), has not changed in any way relevant to the claims. Thus, if the SH-5105-BZ meets this claim limitation, so too does the DualBrite |

| CHART 1: HEATHCO'S PRIOR SALES OF SH-5105 ("DUALBRITE PRIOR SALES") | |
|---|---|
| **CLAIM LIMITATION** | **DEFENDANTS' PRELIMINARY INVALIDITY POSITION** |
| | Prior Art. (*See, e.g.*, HEATH000314 at "Mask 2 IC1" and "Q5.") |
| and the zero-crossing-point time-delay pulse lags with a time difference behind the edge of the symmetric square-wave, wherein the said time difference ranges from ($t_o$) to ($1/(2f)-t_o$), wherein $t_o$ =$(1/2\pi f)\sin^{-1}(V_t/V_m)$, f is frequency of the AC power, $V_m$ is voltage amplitude of the AC power and $V_t$ is threshold voltage for the electric current flowing in the lighting load. | The SH-5105-BZ does not comprise a time difference that ranges from ($t_o$) to ($1/(2f)-t_o$), wherein $t_o$ =$(1/2\pi f)\sin^{-1}(V_t/V_m)$, f is frequency of the AC power, $V_m$ is voltage amplitude of the AC power and $V_t$ is threshold voltage for the electric current flowing in the lighting load. (*See* Defs.' Initial Non-Inf. Conts.) However, if the claims of the '163 patent are construed either literally or under the doctrine of equivalents to cover the Accused Instrumentalities, including the SH-5105-BZ, then the DualBrite Prior Art also comprised a time difference that "ranges from ($t_o$) to ($1/(2f)-t_o$), wherein $t_o$ =$(1/2\pi f)\sin^{-1}(V_t/V_m)$, f is frequency of the AC power, $V_m$ is voltage amplitude of the AC power and $V_t$ is threshold voltage for the electric current flowing in the lighting load." The construction and operation of the DualBrite Prior Art, which is now sold as the SH-5105-BZ (as one model), has not changed in any way relevant to the claims. Thus, if the SH-5105-BZ meets this claim limitation, so too does the DualBrite Prior Art. |
| | |
| 7. The system of claim 1, wherein the lighting load includes a DC light-emitting diode module bridging one port of a full-wave bridge rectifier. | *See supra* regarding claim 1.<br><br>The DualBrite Prior Art was capable of functioning with a lighting load that includes a DC light-emitting diode module bridging one port of a full-wave bridge rectifier. The DualBrite Prior Art operated with a time difference of 1.5 mS. Solving for $V_t$ using the claimed equation recited in claim 1, gives:<br><br>$$V(t) = V_m \sin \omega t$$<br><br>where ω=2πf. Using a frequency of the AC power of 60 Hz, a $V_m$ of 110, and t of 1.5 mS, $V_t$ is calculated to be about 89V.<br><br>One skilled in the art at the time of the application that matured into the '163 patent would know that this $V_t$ would encompass an LED bulb. One skilled in the art would also know that an LED bulb may include a module bridging one |

| CHART 1: HEATHCO'S PRIOR SALES OF SH-5105 ("DUALBRITE PRIOR SALES") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| | port of a full-wave bridge rectifier. (*See, e.g.*, HEATH000576 at 6:60–65 ("The diode bridge and filter component 28 includes a diode bridge D16 for full wave rectification of an incoming AC voltage and for allowing connection without polarity for an incoming DC voltage."))<br><br>Alternatively, this is a well-known and predictable design parameter for a lighting system. One skilled in the art would know that a lighting system may accept various types of light bulbs. LED bulbs were known prior to the critical date of the '163 patent. For example, U.S. Patent No. 8,598,805 ("Tremblay") claims priority to a provisional application filed on May 20, 2010 (HEATH000568), just three months before the application that led to the '163 patent was filed. Tremblay describes that "use of LED bulbs to replace incandescent bulbs in 12V applications is gaining popularity in a large number of applications such as head lights in automobiles and other motor vehicles, as well as for indoor lighting within the home, work place, boats and recreational vehicles. . . LED bulbs consume less power, generate less heat and have a longer operating life . . . ." (HEATH000574 at 1:21–30.) Tremblay continues that "[f]or many applications, it is desirable to be able to vary the emitted light intensity of a LED bulb, for example between full brightness (bright) and a less bright (dim) intensity." (Id. at 1:32–34.) Tremblay recognizes that "LEDs have a minimum voltage threshold at which the LED illuminates." (*Id.* at 1:38–39.) Tremblay discloses that an electronic circuit 22 that allows an LED bulb to function with at least two intensities, bright or dim, that comprises "input terminals 25 for receiving an input voltage 26; a diode bridge and filter(s) component 28 (which can be optional); a LED driver component 30; the LED array 17; and a comparator circuit 32 including a switch 34." (HEATH000576 at 6:20–31.) Tremblay explains that the "diode bridge and filter component 28 includes a diode bridge D16 for full wave rectification of an incoming AC voltage and for allowing connection without polarity for an incoming DC voltage." (*Id.* at 6:61–64.) |

| CHART 1: HEATHCO'S PRIOR SALES OF SH-5105 ("DUALBRITE PRIOR SALES") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| | One skilled in the art would be motivated to combine his/her knowledge that an LED bulb would be compatible with the DualBrite Prior Art to arrive at this claimed limitation. Tremblay shows that one skilled in the art would know that LED bulbs were gaining popularity for uses such as the instant lighting systems, that LED bulbs were capable of varying intensities, such as full brightness and dim, and that an LED bulb could include a diode bridge for full wave rectification of an incoming AC voltage. Such a combination of these known elements would yield predictable results. |
| | |
| 9. A method of lighting control, providing a lighting control circuit for determining a lighting status of a lighting load, wherein the lighting control circuit includes a semi-conductor switching device, a zero-crossing-point detection circuit, and a microcontroller, the method comprising: | The DualBrite Prior Art is a lighting system that provides a method of lighting control. (HEATH000316–35; HEATH000143; *see also* HEATH000314 at "Mask 2 IC1," which is representative of a DualBrite light sold more than one year prior to the filing date of the application that matured into the '163 patent; other product specifications and circuit diagrams for prior art versions of the DualBrite lights have been produced by Defendants and are equally applicable.)

If the claims of the '163 patent are construed either literally or under the doctrine of equivalents to cover the Accused Instrumentalities, including the SH-5105-BZ, then the DualBrite Prior Art also provides a "lighting control circuit for determining a lighting status of a lighting load, wherein the lighting control circuit includes a semi-conductor switching device, a zero-crossing-point detection circuit, and a microcontroller." The construction and operation of the DualBrite Prior Art, which is now sold as the SH-5105-BZ (as one model), has not changed in any way relevant to the claims. Thus, if the SH-5105-BZ meets this claim limitation, so too does the DualBrite Prior Art. (*See, e.g.*, HEATH000314 at "Mask 2 IC1;" HEATH000316, 320 (showing bulb holders and circuitry for insertion of lights bulbs up to 300 Watt maximum.)) |
| the zero-crossing-point detection circuit converting AC voltage sine-waves to symmetric square-waves; | If the claims of the '163 patent are construed either literally or under the doctrine of equivalents to cover the Accused Instrumentalities, including the |

| CHART 1: HEATHCO'S PRIOR SALES OF SH-5105 ("DUALBRITE PRIOR SALES") | |
|---|---|
| **CLAIM LIMITATION** | **DEFENDANTS' PRELIMINARY INVALIDITY POSITION** |
| | SH-5105-BZ, then the DualBrite Prior Art also performed the step of a "zero-crossing-point detection circuit converting AC voltage sine-waves to symmetric square-waves." The construction and operation of the DualBrite Prior Art, which is now sold as the SH-5105-BZ (as one model), has not changed in any way relevant to the claims. Thus, if the SH-5105-BZ meets this claim limitation, so too does the DualBrite Prior Art. (*See, e.g.*, HEATH000314.) |
| the microcontroller reading an external control signal, | The SH-5105-BZ uses a customized ASIC rather than a microcontroller. (*See* Defs.' Initial Non-Inf. Conts.) However, if the claims of the '163 patent are construed either literally or under the doctrine of equivalents to cover the Accused Instrumentalities, including the SH-5105-BZ, then the DualBrite Prior Art also performed the step of a "microcontroller reading an external control signal." The construction and operation of the DualBrite Prior Art, which is now sold as the SH-5105-BZ (as one model), has not changed in any way relevant to the claims. Thus, if the SH-5105-BZ meets this claim limitation, so too does the DualBrite Prior Art. (*See, e.g.*, HEATH000314 at "Mask 2 IC1.") |
| and executing one of a plurality of different external control loops according to the external control signal, | If the claims of the '163 patent are construed either literally or under the doctrine of equivalents to cover the Accused Instrumentalities, including the SH-5105-BZ, then the DualBrite Prior Art also performed the step of "executing one of a plurality of different external control loops according to the external control signal." The construction and operation of the DualBrite Prior Art, which is now sold as the SH-5105-BZ (as one model), has not changed in any way relevant to the claims. Thus, if the SH-5105-BZ meets this claim limitation, so too does the DualBrite Prior Art. (*See, e.g.*, HEATH000314.) |
| and generating a corresponding series of zero-crossing-point time-delay pulses, | If the claims of the '163 patent are construed either literally or under the doctrine of equivalents to cover the Accused Instrumentalities, including the SH-5105-BZ, then the DualBrite Prior Art also performed the step of "generating a corresponding series of zero-crossing-point time-delay pulses." The construction and operation of the DualBrite Prior Art, which is now sold as the SH-5105-BZ (as one model), has not changed in any way relevant to the claims. Thus, if the SH-5105-BZ meets this claim limitation, so too does the |

| CHART 1: HEATHCO'S PRIOR SALES OF SH-5105 ("DUALBRITE PRIOR SALES") | |
|---|---|
| **CLAIM LIMITATION** | **DEFENDANTS' PRELIMINARY INVALIDITY POSITION** |
| | DualBrite Prior Art. (*See, e.g.*, HEATH000314.) |
| wherein the zero-crossing-point time-delay pulse lags behind the edge of the symmetric square-wave for a time difference, wherein the said time difference ranges from ($t_o$) to $(1/(2f)-t_o)$, wherein $t_o$ $=(1/2\pi f)\sin^{-1}(V_t/V_m)$, f is frequency of the AC power, $V_m$ is voltage amplitude of the AC power and $V_t$ is threshold voltage for the electric current flowing in the lighting load; | The SH-5105-BZ does not comprise a time difference that ranges from ($t_o$) to $(1/(2f)-t_o)$, wherein $t_o =(1/2\pi f)\sin^{-1}(V_t/V_m)$, f is frequency of the AC power, $V_m$ is voltage amplitude of the AC power and $V_t$ is threshold voltage for the electric current flowing in the lighting load. (*See* Defs.' Initial Non-Inf. Conts.) However, if the claims of the '163 patent are construed either literally or under the doctrine of equivalents to cover the Accused Instrumentalities, including the SH-5105-BZ, then the DualBrite Prior Art also comprised a "zero-crossing-point time-delay pulse [that] lags behind the edge of the symmetric square-wave for a time difference, wherein the said time difference ranges from ($t_o$) to $(1/(2f)-t_o)$, wherein $t_o =(1/2\pi f)\sin^{-1}(V_t/V_m)$, f is frequency of the AC power, $V_m$ is voltage amplitude of the AC power and $V_t$ is threshold voltage for the electric current flowing in the lighting load." The construction and operation of the DualBrite Prior Art, which is now sold as the SH-5105-BZ (as one model), has not changed in any way relevant to the claims. Thus, if the SH-5105-BZ meets this claim limitation, so too does the DualBrite Prior Art. |
| and controlling the time period for an AC power transmitting electric power to the lighting load by means of the semi-conductor switching device controlled by the corresponding zero-crossing-point time-delay pulse. | If the claims of the '163 patent are construed either literally or under the doctrine of equivalents to cover the Accused Instrumentalities, including the SH-5105-BZ, then the DualBrite Prior Art also performed the step of "controlling the time period for an AC power transmitting electric power to the lighting load by means of the semi-conductor switching device controlled by the corresponding zero-crossing-point time-delay pulse." The construction and operation of the DualBrite Prior Art, which is now sold as the SH-5105-BZ (as one model), has not changed in any way relevant to the claims. Thus, if the SH-5105-BZ meets this claim limitation, so too does the DualBrite Prior Art. (*See, e.g.*, HEATH000314.) |
| | |
| 18. The method of claim 9, wherein the external control signal is a first external control signal or a second external control signal, and the | *See supra* regarding claim 9.<br><br>If the claims of the '163 patent are construed either literally or under the |

| CHART 1: HEATHCO'S PRIOR SALES OF SH-5105 ("DUALBRITE PRIOR SALES") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| microcontroller executes the variant external control loops in response to the first external control signal, so as to execute a first illumination mode; and the microcontroller alternately executes the variant external control loops in response to the second external control signal, so as to alternately execute a second illumination mode and a third illumination mode | doctrine of equivalents to cover the Accused Instrumentalities, including the SH-5105-BZ, then the DualBrite Prior Art also meets the limitation a "wherein the external control signal is a first external control signal or a second external control signal, and the microcontroller executes the variant external control loops in response to the first external control signal, so as to execute a first illumination mode; and the microcontroller alternately executes the variant external control loops in response to the second external control signal, so as to alternately execute a second illumination mode and a third illumination mode." The construction and operation of the DualBrite Prior Art, which is now sold as the SH-5105-BZ (as one model), has not changed in any way relevant to the claims. Thus, if the SH-5105-BZ meets this claim limitation, so too does the DualBrite Prior Art. (*See, e.g.*, HEATH000317 (describing the "DualBrite® Timer.")) |
| | |
| 19. The method of claim 18, wherein the first external control signal is generated by a daylight detection circuit and the second external control signal is generated by a motion detection circuit | *See supra* regarding claim 18.<br><br>If the claims of the '163 patent are construed either literally or under the doctrine of equivalents to cover the Accused Instrumentalities, including the SH-5105-BZ, then the DualBrite Prior Art also meets the limitation a "the first external control signal is generated by a daylight detection circuit and the second external control signal is generated by a motion detection circuit." The construction and operation of the DualBrite Prior Art, which is now sold as the SH-5105-BZ (as one model), has not changed in any way relevant to the claims. Thus, if the SH-5105-BZ meets this claim limitation, so too does the DualBrite Prior Art. (*See, e.g.*, HEATH000316 (describing that the light is turned on when motion is detected and that the photocell keeps the lighting off during daylight hours.)) |

| CHART 2: U.S. PATENT NO. 7,190,125 ("MCDONOUGH") ||
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| 1. A lighting control system using with a microcontroller, comprising: | McDonough (HEATH000552–67) discloses a lighting control system using a microcontroller. McDonough states "the invention relates to lighting control devices. More particularly, the invention relates to programmable wallbox dimmers." (HEATH000560 at 1:5–7.) McDonough discloses "The lighting control device may include . . . a microcontroller . . . ." (HEATH000561 at 4:53–56.) McDonough describes that the microcontroller may execute computer-executable instructions that are stored on a computer-readable medium, such as random-access or read-only memory within the wallbox dimmer. (HEATH000564 at 10:37–45.) |
| a lighting load; | McDonough discloses a lighting load. McDonough states "The invention provides a programmable lighting control device that controls a light intensity level of at least one lamp." (*Id.* at 4:51–53; *see also* Fig. 3, reference 116.) |
| a semi-conductor switching device coupled to the lighting load and an AC power, wherein the semi-conductor switching device controls a time period for the AC power transmitting an electric power to the lighting load; | McDonough discloses a semi-conductor switching device coupled to the lighting load and an AC power, wherein the semi-conductor switching device controls a time period for the AC power transmitting an electric power to the lighting load. McDonough states that "The lighting load 116 may be connected through a controllably conductive device 118. Controllably conductive device 118 has a control, or gate, input 126, which is connected to a gate drive circuit 131. It should be understood that control inputs on the gate input 126 will render the controllably conductive device 118 conductive or non-conductive, which in turn controls the power supplied to the lighting load 116. Drive circuitry 131 provides control inputs to the controllably conductive device 118 in response to command signals from a microcontroller 132." (HEATH000562 at 6:4–14; *see also* Fig. 3.) McDonough continues that "Phase-controlled dimmers are well known and perform dimming functions by selectively connecting the AC power source 148 to the lighting load 116 during each half-cycle of the AC waveform received from the power source. The AC power may be switched using controllably conductive devices [118] such as triacs, anti-parallel SCRs, field effect transistors (FETs), or insulated gate bipolar |

| CHART 2: U.S. PATENT NO. 7,190,125 ("MCDONOUGH") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| | transistors (IGBTs). The amount of dimming is determined by the ratio of 'ON' time to 'OFF' time of the controllably conductive device 118." (*Id.* at 6:14–23.) |
| a zero-crossing-point detection circuit coupled to the AC power, wherein the zero-crossing-point detection circuit converts AC voltage sine-waves into symmetric square-waves, and an edge of the symmetric square-wave corresponds to a zero-crossing point of the AC voltage sine-wave; | McDonough discloses a zero-crossing-point detection circuit coupled to the AC power, wherein the zero-crossing-point detection circuit converts AC voltage sine-waves into symmetric square-waves, and an edge of the symmetric square-wave corresponds to a zero-crossing point of the AC voltage sine-wave. McDonough states that "The zero-crossing detector determines the zero-crossing points of the input waveform from the power supply 112. The microcontroller sets up gate control signals to operate the switching device to provide voltage from the power supply 112 to the load 116 at predetermined times relative to the zero-crossing points of the waveform. The zero-crossing detector may be a conventional zero-crossing detector, and need not be described here in further detail." (HEATH000560 at 2:24–32.) McDonough further states "zero-crossing detector 134 determines the zero-crossing points of the input 60 HZ AC waveform from the AC power source 148." (HEATH000562 at 6:53–55; *see also* Fig. 3.) A conventional zero-crossing detector is typically understood to convert sine waves into square waves when the sine wave crosses zero. (*See, e.g.*, U.S. Patent No. 4,345,169 at 1:7–15; Figs. 3A, 3B (issued Aug. 17, 1982) (HEATH000548–551.)) |
| and a microcontroller coupled to the semi-conductor switching device and the zero-crossing-point detection circuit, wherein the microcontroller receives the symmetric square-wave and sends out a zero-crossing-point time-delay pulse to the semi-conductor switching device, | McDonough discloses a microcontroller coupled to the semi-conductor switching device and the zero-crossing-point detection circuit, wherein the microcontroller receives the symmetric square-wave and sends out a zero-crossing-point time-delay pulse to the semi-conductor switching device. McDonough states that "Drive circuitry 131 provides control inputs to the controllably conductive device 118 in response to command signals from a microcontroller 132." (HEATH000562 at 6:11–13; *see also* Fig. 3.) McDonough discloses that "Zero-crossing detector 134 determines the zero-crossing points of the input 60 HZ AC waveform from the AC power source 148. The zero-crossing information is provided as an input to microcontroller 132. Microcontroller 132 sets up gate control signals to operate controllably |

| CHART 2: U.S. PATENT NO. 7,190,125 ("MCDONOUGH") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| | conductive device 118 to provide voltage from the AC power source to lighting load 116 at predetermined times relative to the Zero-crossing points of the AC waveform. Zero-crossing detector may be a conventional zero-crossing detector, and need not be described here in further detail. In addition, the timing of transition firing pulses relative to the zero crossings of the waveform is also known, and need not be described further." (*Id.* at 6:53–65.) |
| and the zero-crossing-point time-delay pulse lags with a time difference behind the edge of the symmetric square-wave, wherein the said time difference ranges from ($t_o$) to (1/(2f)−$t_o$), wherein $t_o$ =(1/2πf)sin$^{-1}$($V_t$/$V_m$), f is frequency of the AC power, $V_m$ is voltage amplitude of the AC power and $V_t$ is threshold voltage for the electric current flowing in the lighting load. | McDonough discloses that "the zero-crossing-point time-delay pulse lags with a time difference behind the edge of the symmetric square-wave, wherein the said time difference ranges from ($t_o$) to (1/(2f)−$t_o$), wherein $t_o$ =(1/2πf)sin$^{-1}$($V_t$/$V_m$), f is frequency of the AC power, $V_m$ is voltage amplitude of the AC power and $V_t$ is threshold voltage for the electric current flowing in the lighting load." A sinusoidal source produces a signal that varies sinusoidally with time. A sinusoid can be expressed as a sine function as follows: $$V(t) = V_m \sin \omega t$$ where $V_m$ is the maximum amplitude and ω is the angular frequency, or ω=2πf (rad/sec). *See, e.g.*, Muhammad H. Rashid, THE ENGINEERING HANDBOOK 109-1–109-2 (Richard C. Dorf ed., CRC Press 2005) (2004), *available at* https://books.google.com/books?id=l_TLBQAAQBAJ&printsec=frontcover#v=onepage&q&f=false. A time where the voltage reaches $V_t$ is simply: $$t = \frac{1}{2\pi f} \sin^{-1}\left(\frac{V_t}{V_m}\right)$$ This is the equation for $t_o$, as shown below: |

| CHART 2: U.S. PATENT NO. 7,190,125 ("MCDONOUGH") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| | $$V(t) = V_m \sin \omega t$$ Dividing by $V_m$ gives: $$\frac{V_t}{V_m} = \sin \omega t$$ Solving for t: $$\sin^{-1}\left(\frac{V_t}{V_m}\right) = \omega t \quad \text{if} \quad \frac{1}{\omega}\sin^{-1}\left(\frac{V_t}{V_m}\right) = t$$ Substituting $\omega = 2\pi f$ gives: $$\frac{1}{2\pi f}\sin^{-1}\left(\frac{V_t}{V_m}\right) = t$$ which is the equation for the claimed $t_o$. Thus, McDonough discloses $t_o$. McDonough also discloses that the time difference ranges from ($t_o$) to ($1/(2f)-t_o$). McDonough describes "A typical, AC, phase-control dimmer regulates the amount of energy supplied to the lighting load 116 by conducting for some portion of each half-cycle of the AC waveform, and not conducting for the remainder of the half-cycle. Because the dimmer 114 is in series with the lighting load 116, the longer the dimmer 114 conducts, the more energy will be delivered to the lighting load 116. Where the lighting load 116 is a lamp set, the more energy delivered to the lighting load 116, the greater the light intensity level of the lamp set. In a typical dimming scenario, a user may adjust a control to set the light intensity level of the lamp set to a desired light intensity level. The portion of each half-cycle for which the dimmer conducts is based on the |

| CHART 2: U.S. PATENT NO. 7,190,125 ("MCDONOUGH") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| | selected light intensity level." (HEATH000560 at 1:32–45.) McDonough then describes that a user may program high-end and low-end trim features: "'High end trim' is a feature that governs the maximum intensity level to which the lighting load 116 may be set by the dimmer. Typical values for the high end trim range between about 60% and about 100% of full intensity. In an example embodiment, the high end trim may be preprogrammed to about be 90% of full intensity. In a wallbox dimmer according to the invention, high end trim is a feature that may be user-programmed as described below. Similarly, 'low end trim' is a feature that governs the minimum intensity level to which the lighting load 116 may be set by the dimmer. Typical values for the low end trim range between about 1% and about 20% of full intensity. In an example embodiment, the low end trim may be preprogrammed to about be 10% of full intensity. In a wallbox dimmer according to the invention, low end trim is a feature that may be user-programmed as described below." (HEATH000564 at 9:10–25.) Thus, McDonough discloses that the user may set the intensity of the light, which in turn sets the time that the dimmer conducts (the longer the dimmer conducts, the more energy it delivers to the lighting load, and vice versa). |
| 7. The system of claim 1, wherein the lighting load includes a DC light-emitting diode module bridging one port of a full-wave bridge rectifier. | *See supra* regarding claim 1.<br><br>This is a well-known and predictable design parameter for a lighting system. LED bulbs were known prior to the critical date of the '163 patent. For example, the DualBrite Prior Art was compatible with LED bulbs. (*See supra*.) McDonough states that the lighting load "may include a variety of lamps, such as incandescent lamps and/or other lighting loads such as electronic low voltage (ELV) or magnetic low voltage (MLV) loads, for example." (HEATH000560 at 1:11–19.)<br><br>U.S. Patent No. 8,598,805 ("Tremblay") (HEATH000568–78) claims priority to a provisional application filed on May 20, 2010 (HEATH000568), just three |

| CHART 2: U.S. PATENT NO. 7,190,125 ("MCDONOUGH") | |
| --- | --- |
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| | months before the application that led to the '163 patent was filed. Tremblay describes that "use of LED bulbs to replace incandescent bulbs in 12V applications is gaining popularity in a large number of applications such as head lights in automobiles and other motor vehicles, as well as for indoor lighting within the home, work place, boats and recreational vehicles. . . LED bulbs consume less power, generate less heat and have a longer operating life . . . ." (HEATH000574 at 1:21–30.) Tremblay continues that "[f]or many applications, it is desirable to be able to vary the emitted light intensity of a LED bulb, for example between full brightness (bright) and a less bright (dim) intensity." (Id. at 1:32–34.) Tremblay recognizes that "LEDs have a minimum voltage threshold at which the LED illuminates." (*Id.* at 1:38–39.) Tremblay discloses that an electronic circuit 22 that allows an LED bulb to function with at least two intensities, bright or dim, that comprises "input terminals 25 for receiving an input voltage 26; a diode bridge and filter(s) component 28 (which can be optional); a LED driver component 30; the LED array 17; and a comparator circuit 32 including a switch 34." (HEATH000576 at 6:20–31.) Tremblay explains that the "diode bridge and diode filter component 28 includes a diode bridge D16 for full wave rectification of an incoming AC voltage and for allowing connection without polarity for an incoming DC voltage." (*Id.* at 6:61–64.)<br><br>One skilled in the art would be motivated to combine the teachings of McDonough that a variety of lights could be used in the disclosed lighting system with his/her knowledge that an LED bulb would be compatible to arrive at this claimed limitation. Tremblay shows that one skilled in the art would know that LED bulbs were gaining popularity for uses such as the instant lighting systems, that LED bulbs were capable of varying intensities, such as full brightness and dim, and that an LED bulb could include a diode bridge for full wave rectification of an incoming AC voltage. Such a combination of these known elements would yield predictable results. |
| | |

| CHART 2: U.S. PATENT NO. 7,190,125 ("MCDONOUGH") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| 9. A method of lighting control, providing a lighting control circuit for determining a lighting status of a lighting load, wherein the lighting control circuit includes a semi-conductor switching device, a zero-crossing-point detection circuit, and a microcontroller, the method comprising: | McDonough discloses a method of lighting control providing a lighting control circuit for determining a lighting status of a lighting load. McDonough states "the invention relates to lighting control devices. More particularly, the invention relates to programmable wallbox dimmers." (HEATH000560 at 1:5–7.)<br><br>McDonough discloses a lighting load. McDonough states "The invention provides a programmable lighting control device that controls a light intensity level of at least one lamp." (*Id.* at 4:51–53; *see also* Fig. 3, reference 116.)<br><br>McDonough discloses that the lighting control circuit includes a semi-conductor switching device. McDonough states that "The lighting load 116 may be connected through a controllably conductive device 118. Controllably conductive device 118 has a control, or gate, input 126, which is connected to a gate drive circuit 131. It should be understood that control inputs on the gate input 126 will render the controllably conductive device 118 conductive or non-conductive, which in turn controls the power supplied to the lighting load 116. Drive circuitry 131 provides control inputs to the controllably conductive device 118 in response to command signals from a microcontroller 132." (HEATH000562 at 6:4–14; *see also* Fig. 3.)<br><br>McDonough discloses a zero-crossing-point detection circuit. McDonough states that "The zero-crossing detector determines the zero-crossing points of the input waveform from the power supply 112. The microcontroller sets up gate control signals to operate the switching device to provide voltage from the power supply 112 to the load 116 at predetermined times relative to the zero-crossing points of the waveform. The zero-crossing detector may be a conventional zero-crossing detector, and need not be described here in further detail." (HEATH000560 at 2:24–32.) |

19

| CHART 2: U.S. PATENT NO. 7,190,125 ("MCDONOUGH") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| | McDonough discloses a microcontroller. McDonough discloses "The lighting control device may include . . . a microcontroller . . . ." (HEATH000561 at 4:53–56.) McDonough describes that the microcontroller may execute computer-executable instructions that are stored on a computer-readable medium, such as random-access or read-only memory within the wallbox dimmer. (HEATH000564 at 10:37–45.) |
| the zero-crossing-point detection circuit converting AC voltage sine-waves to symmetric square-waves; | McDonough states that "The zero-crossing detector determines the zero-crossing points of the input waveform from the power supply 112. The microcontroller sets up gate control signals to operate the switching device to provide voltage from the power supply 112 to the load 116 at predetermined times relative to the zero-crossing points of the waveform. The zero-crossing detector may be a conventional zero-crossing detector, and need not be described here in further detail." (HEATH000560 at 2:24–32.) McDonough further states "zero-crossing detector 134 determines the zero-crossing points of the input 60 HZ AC waveform from the AC power source 148." (HEATH000562 at 6:53–55; *see also* Fig. 3.) A conventional zero-crossing detector is typically understood to convert sine waves into square waves when the sine wave crosses zero. (*See, e.g.*, U.S. Patent No. 4,345,169 at 1:7–15; Figs. 3A, 3B (issued Aug. 17, 1982) (HEATH000548–551.)) |
| the microcontroller reading an external control signal, | McDonough discloses that the microcontroller reads an external control signal. McDonough describes that in normal operating mode, there are preprogrammed "raise light level" and "lower light level" routines in the microcontroller. McDonough describes that in the "raise light level" routine, depressing actuator 14a "initiates" the "raise light level" routine in microcontroller 132 and causes it to decrease the off time of the controllably conductive device 118 via gate drive circuit 131, which in turn increase the AC voltage that is transferred to the lighting load, and results in a brighter light. (HEATH000563 at 7:34–62.) |
| and executing one of a plurality of different external control loops according to the external control signal, | McDonough discloses the microcontroller executing one of a plurality of different external control loops according to the external control signal. McDonough describes that in normal operating mode, there are a plurality of |

| CHART 2: U.S. PATENT NO. 7,190,125 ("MCDONOUGH") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| | external control loops, including at least preprogrammed "raise light level" and "lower light level" routines in the microcontroller. McDonough describes that in the "raise light level" routine, depressing actuator 14a "initiates" the "raise light level" routine in microcontroller 132 whereas depressing actuator 14b "initiates" the "lower light level" routine in microcontroller 132. (HEATH000563 at 7:34–62.) |
| and generating a corresponding series of zero-crossing-point time-delay pulses, | McDonough discloses generating a series of zero-crossing-point time-delay pulses. McDonough states that "microcontroller 132 sets up gate control signals to operate controllably conductive device 118 to provide voltage from the AC power source to lighting load 116 at predetermined times relative to the zero-crossing points of the AC waveform. Zero-crossing detector 134 may be a conventional zero-crossing detector and need not be described here in further detail. In addition, the timing of transition firing pulses relative to the zero crossings of the AC waveform is also known, and need not be described further." (HEATH000562 at 6:56–65.) McDonough describes that in the "raise light level" routine, microcontroller 132 "decrease[s] the off (i.e., non-conduction) time of controllably conductive device 118 via gate drive circuit 131. Decreasing the off time increases the amount of time controllably conductive device 118 is conductive, which means that a greater proportion of AC voltage from the AC input is transferred to lighting load 116. Thus, the light intensity level of lighting load 116 may be increased. The off time decreases as long as the raise switch R remains closed. After the raise switch R opens, e.g., by the user releasing actuator 14a, the routine in the microcontroller is terminated, and the off time is held constant." (HEATH000563 at 7:34–47.) Similarly, McDonough describes that in the "lower light level" routine, microcontroller 132 "increase[s] the off time of controllably conductive device 118 via gate drive circuit 131. Increasing the off time decreases the amount of time controllably conductive device 118 is conductive, which means that a lesser proportion of AC voltage from the AC input is transferred to lighting load 116. Thus, the light intensity level of lighting load 116 may be decreased. The |

| CHART 2: U.S. PATENT NO. 7,190,125 ("MCDONOUGH") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| | off time is increased (without turning off the dimmer) as long as the lower switch L remains closed. After the lower switch L opens, e. g., by the user releasing actuator 14b, the routine in the microcontroller 132 is terminated, and the off time is held constant." (*Id.* at 7:48–62.) |
| wherein the zero-crossing-point time-delay pulse lags behind the edge of the symmetric square-wave for a time difference, wherein the said time difference ranges from ($t_o$) to ($1/(2f)−t_o$), wherein $t_o$ =$(1/2\pi f)\sin^{-1}(V_t/V_m)$, f is frequency of the AC power, $V_m$ is voltage amplitude of the AC power and $V_t$ is threshold voltage for the electric current flowing in the lighting load; | McDonough discloses that "the zero-crossing-point time-delay pulse lags behind the edge of the symmetric square-wave for a time difference, wherein the said time difference ranges from ($t_o$) to ($1/(2f)−t_o$), wherein $t_o = (1/2\pi f)\sin^{-1}(V_t/V_m)$, f is frequency of the AC power, $V_m$ is voltage amplitude of the AC power and $V_t$ is threshold voltage for the electric current flowing in the lighting load." A sinusoidal source produces a signal that varies sinusoidally with time. A sinusoid can be expressed as a sine function as follows:  $$V(t) = V_m \sin \omega t$$  where $V_m$ is the maximum amplitude and $\omega$ is the angular frequency, or $\omega=2\pi f$ (rad/sec). *See, e.g.*, Muhammad H. Rashid, THE ENGINEERING HANDBOOK 109-1–109-2 (Richard C. Dorf ed., CRC Press 2005) (2004), *available at* https://books.google.com/books?id=l_TLBQAAQBAJ&printsec=frontcover#v=onepage&q&f=false.  A time where the voltage reaches $V_t$ is simply:  $$t = \frac{1}{2\pi f}\sin^{-1}\left(\frac{V_t}{V_m}\right)$$  This is the equation for $t_o$, as shown below:  $$V(t) = V_m \sin \omega t$$ |

22

| CHART 2: U.S. PATENT NO. 7,190,125 ("MCDONOUGH") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| | Dividing by $V_m$ gives: $$\frac{V_t}{V_m} = \sin \omega t$$ Solving for t: $$\sin^{-1}\left(\frac{V_t}{V_m}\right) = \omega t \quad \text{if} \quad \frac{1}{\omega}\sin^{-1}\left(\frac{V_t}{V_m}\right) = t$$ Substituting $\omega = 2\pi f$ gives: $$\frac{1}{2\pi f}\sin^{-1}\left(\frac{V_t}{V_m}\right) = t$$ which is the equation for the claimed $t_o$. Thus, McDonough discloses $t_o$. McDonough also discloses that the time difference ranges from ($t_o$) to ($1/(2f) - t_o$). McDonough describes "A typical, AC, phase-control dimmer regulates the amount of energy supplied to the lighting load 116 by conducting for some portion of each half-cycle of the AC waveform, and not conducting for the remainder of the half-cycle. Because the dimmer 114 is in series with the lighting load 116, the longer the dimmer 114 conducts, the more energy will be delivered to the lighting load 116. Where the lighting load 116 is a lamp set, the more energy delivered to the lighting load 116, the greater the light intensity level of the lamp set. In a typical dimming scenario, a user may adjust a control to set the light intensity level of the lamp set to a desired light intensity level. The portion of each half-cycle for which the dimmer conducts is based on the selected light intensity level." (HEATH000560 at 1:32–45.) McDonough then |

| CHART 2: U.S. PATENT NO. 7,190,125 ("MCDONOUGH") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| | describes that a user may program high-end and low-end trim features: "'High end trim' is a feature that governs the maximum intensity level to which the lighting load 116 may be set by the dimmer. Typical values for the high end trim range between about 60% and about 100% of full intensity. In an example embodiment, the high end trim may be preprogrammed to about be 90% of full intensity. In a wallbox dimmer according to the invention, high end trim is a feature that may be user-programmed as described below. Similarly, 'low end trim' is a feature that governs the minimum intensity level to which the lighting load 116 may be set by the dimmer. Typical values for the low end trim range between about 1% and about 20% of full intensity. In an example embodiment, the low end trim may be preprogrammed to about be 10% of full intensity. In a wallbox dimmer according to the invention, low end trim is a feature that may be user-programmed as described below." (HEATH000564 at 9:10–25.) Thus, McDonough discloses that the user may set the intensity of the light, which in turn sets the time that the dimmer conducts (the longer the dimmer conducts, the more energy it delivers to the lighting load, and vice versa). |
| and controlling the time period for an AC power transmitting electric power to the lighting load by means of the semi-conductor switching device controlled by the corresponding zero-crossing-point time-delay pulse. | McDonough discloses controlling the time period for an AC power transmitting electric power to the lighting load by means of the semi-conductor switching device controlled by the corresponding zero-crossing-point time-delay pulse. McDonough states that "The lighting load 116 may be connected through a controllably conductive device 118. Controllably conductive device 118 has a control, or gate, input 126, which is connected to a gate drive circuit 131. It should be understood that control inputs on the gate input 126 will render the controllably conductive device 118 conductive or non-conductive, which in turn controls the power supplied to the lighting load 116. Drive circuitry 131 provides control inputs to the controllably conductive device 118 in response to command signals from a microcontroller 132." (HEATH000562 at 6:4–14; *see also* Fig. 3.) McDonough continues that "Phase-controlled dimmers are well known and perform dimming functions by selectively connecting the AC power source 148 to the lighting load 116 during each half-cycle of the AC waveform |

| CHART 2: U.S. PATENT NO. 7,190,125 ("MCDONOUGH") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| | received from the power source. The AC power may be switched using controllably conductive devices [118] such as triacs, anti-parallel SCRs, field effect transistors (FETs), or insulated gate bipolar transistors (IGBTs). The amount of dimming is determined by the ratio of 'ON' time to 'OFF' time of the controllably conductive device 118." (*Id.* at 6:14–23.) |
| | |
| 18. The method of claim 9, wherein the external control signal is a first external control signal or a second external control signal, and the microcontroller executes the variant external control loops in response to the first external control signal, so as to execute a first illumination mode; and the microcontroller alternately executes the variant external control loops in response to the second external control signal, so as to alternately execute a second illumination mode and a third illumination mode | *See supra* regarding claim 9.<br><br>McDonough also discloses additional external control loops that may be activated in response to additional external control signals. For example, in addition to "raise light level" and "lower light level" illumination modes, described *supra* in claim 9, McDonough discloses a "fade to off" illumination mode: "In an example embodiment of a wallbox dimmer operating in normal operational mode, different closures of the toggle switch T will result in different effects depending on the state of lighting load 116 when the actuator 16 is actuated. For example, when the lighting load 116 is at an initial, non-zero intensity level, a single tap of actuator 16 [e.g., a first external control signal], i.e., a transitory closure of toggle switch T, may cause the load to fade to off. Two taps in quick succession [e.g., a second external control signal] may initiate a routine in microcontroller 132 that causes the lighting load 116 to fade from the initial intensity level to the full intensity level at a preprogrammed fade rate. A 'hold' of the actuator 16 [e.g., another external control signal], i.e., a closure of toggle switch T for more than a transitory duration, may initiate a routine in microcontroller 132 that gradually fades in a predetermined fade rate sequence over an extended period of time from the initial intensity level to off [e.g., a third illumination mode]. When the lighting load 116 is off and microcontroller 132 detects a single tap or a closure of more than transitory duration, a preprogrammed routine is initiated in microcontroller 132 that causes the lighting load 116 to fade from off to a preset desired intensity level at a preprogrammed fade rate. Two taps in quick succession will initiate a routine |

| CHART 2: U.S. PATENT NO. 7,190,125 ("MCDONOUGH") | |
|---|---|
| CLAIM LIMITATION | DEFENDANTS' PRELIMINARY INVALIDITY POSITION |
| | in microcontroller 132 that causes the light intensity level of the lighting load 116 to fade at a predetermined rate from off to full. The fade rates may be the same, or they may be different." (HEATH000563 at 8:13–38.) McDonough continues that "A wallbox dimmer such as described [] may be preprogrammed to provide certain features, examples of which are described below. The value(s) associated with the feature(s) may be stored in memory 137 in the wallbox dimmer. When the feature is employed during normal operation of the dimmer, the microcontroller 132 may access the memory 137 to retrieve the value(s) and cause the dimmer to perform [i.e., execute a control loop] according to the stored value(s)." (*Id.* at 8:47–54.) McDonough also discloses "any or all of the features that define the fade features may be user-programmed. When the actuator 16 is actuated, depending on the state of lighting load 116 When the actuator 16 is actuated, and based on the number and type of closures of the toggle switch T, the microcontroller 132 may access the memory 137 to retrieve one or more of the user-selected values." (HEATH000564 at 10:18–27.) Thus, McDonough discloses various external control signals that may cause the microcontroller to execute various illumination modes. |
| | |
| 19. The method of claim 18, wherein the first external control signal is generated by a daylight detection circuit and the second external control signal is generated by a motion detection circuit | *See supra* regarding claim 18. <br><br> This is a well-known and predictable design parameter for a lighting system. Daylight detection and motion detection circuits were known prior to the critical date of the '163 patent. For example, the DualBrite Prior Art used both daylight detection and motion detection circuits. (*See supra*.) McDonough states that "Signal detector 135 detects when the switches are closed, and outputs signals representative of the state of the switches as inputs to microcontroller 132. Microcontroller 132 determines the duration of closure in response to inputs from signal detector 135. Signal detector 135 may be any form of conventional circuit for detecting a switch closure and converting it to a |

| CHART 2: U.S. PATENT NO. 7,190,125 ("MCDONOUGH") | |
|---|---|
| **CLAIM LIMITATION** | **DEFENDANTS' PRELIMINARY INVALIDITY POSITION** |
| | form suitable as an input to a microcontroller 132. Those skilled in the art will understand how to construct signal detector 135 without the need for further explanation herein." (HEATH000563 at 7:24–33.) One skilled in the art would be motivated to combine the teachings of McDonough that the microcontroller could be programmed to receive inputs from a signal detector with his/her knowledge of daylight and motion detection circuits to arrive at this claimed limitation. Such a combination of these known elements would yield predictable results. |

Date:  June 16, 2015                    /s/ Nicole L. Little
                                        Karl R. Fink (IL 6180508)
                                        krfink@fitcheven.com
                                        Nicole L. Little (IL 6297047)
                                        nlittle@fitcheven.com
                                        FITCH, EVEN, TABIN & FLANNERY LLP
                                        120 South LaSalle Street, Suite 1600
                                        Chicago, Illinois 60603
                                        Telephone: (312) 577-7000
                                        Facsimile: (312) 577-7007

                                        *Attorneys for Defendants HeathCo LLC and
                                        Lowe's Companies, Inc.*

### CERTIFICATE OF SERVICE

The undersigned certifies that the following were served with a copy the above

**DEFENDANTS' INITIAL INVALIDITY CONTENTIONS** via electronic mail on June 16,

2015:

>           Grantland G. Drutchas
>           Drutchas@mbhb.com
>           Marcus J. Thymian
>           Thymian@mbhb.com
>           Nicole A. Keenan
>           Keenan@mbhb.com
>           Kirsten L. Thomson
>           Thomson@mbhb.com
>           Cole Richter
>           Richter@mbhb.com
>           MCDONNELL, BOEHNEN, HULBERT & BERGHOFF
>           300 South Wacker Drive
>           Chicago, IL  60606
>           Phone: (312) 913-0001
>           Fax:     (312) 913-0002
>
>           *Attorneys for Plaintiff Vaxcel International Co., Ltd.*

                                        /s/ Nicole L. Little
                                        Nicole L. Little
                                        *Attorney for Defendants HeathCo LLC and
                                        Lowe's Companies, Inc.*