UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VAXCEL INTERNATIONAL CO., <br><br> Plaintiff and <br> Counterclaim Defendant, <br><br> v. <br><br> HEATHCO LLC, <br> LOWE'S COMPANIES, INC., and <br> LOWE'S HOME CENTERS, LLC <br><br> Defendants and <br> Counterclaim Plaintiffs. | Case No. 15 C 696 <br><br> Judge John Robert Blakey |
| NORTH TECH <br> INTERNATIONAL CO., LTD, <br><br> Counterclaimant <br> in Intervention, <br><br> v. <br><br> HEATHCO LLC, <br> LOWE'S COMPANIES, INC., and <br> LOWE'S HOME CENTERS, LLC <br><br> Counterclaims <br> in Intervention Defendants. | |

## MEMORANDUM OPINION AND ORDER

In this patent infringement dispute over U.S. Patent No. 8,310,163 (the "'163 Patent"), the parties dispute whether the alleged infringers, Defendants, Counterclaim Plaintiffs and Counterclaims in Intervention Defendants HeathCo LLC ("HeathCo"), Lowe's Companies, Inc. ("Lowe's Companies") and Lowe's Home

Centers, LLC ("Lowe's Home Centers," and together with Lowe's Companies, "Lowe's"), received a release or assignment of the '163 Patent from Counterclaimant in Intervention North Tech International Co., Ltd. ("North Tech"). North Tech agreed to supply light fixtures to Lowe's pursuant to a Master Standard Buying Agreement and also to release and assign certain intellectual property rights. In its Counterclaims in Intervention, North Tech—which does not own the '163 Patent (rather, Plaintiff Vaxcel International Co. ("Vaxcel") is the owner)—disputes that its release and assignment of intellectual proper rights included the '163 Patent.

Now before this Court is Defendants' motion to dismiss [98] North Tech's Counterclaims in Intervention pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the motion is denied.

I. **Legal Standard**

Beginning with Rule 12(b)(1), North Tech bears the burden of establishing that the jurisdictional requirements have been met. *Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589 (7th Cir. 2014). When jurisdictional facts are challenged, North Tech must support those facts by competent proof. *McFadden v. Pryor*, No. 12-4110, 2015 WL 3932100, at *1 (N.D. Ill. June 25, 2015) (Blakey, J.) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)). The standard for a Rule 12(b)(1) motion differs from that under Rule 12(b)(6) only in that this Court "may properly look beyond the jurisdictional allegations of the [Counterclaims in Intervention] and view whatever evidence has been submitted on the issue to

determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

Turning to Rule 12(b)(6), this Court must construe the Counterclaims in Intervention in the light most favorable to the pleading party (here, North Tech), accept as true all well-pleaded facts and draw reasonable inferences in its favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To survive Defendants' motion under Rule 12(b)(6), the Counterclaims in Intervention must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. Background

### A. Facts

On July 22, 2013, North Tech entered into a Master Standard Buying Agreement with Lowe's to supply lighting fixtures. Counterclaims in Intervention ¶¶ 19-21; Master Standard Buying Agreement, attached as Exhibit A to

3

Counterclaims in Intervention. Relevant for purposes of this motion are three provisions of the Agreement, which adopts North Carolina law. Counterclaims in Intervention ¶ 29 (citing the choice of law clause, Master Standard Buying Agreement § 15.12).

First, the Agreement lacked any price or quantity term, but instead allowed Lowe's to submit purchase orders in its "sole discretion." Counterclaims in Intervention ¶¶ 23-24 (quoting Master Standard Buying Agreement § 3.1(a)). Lowe's issued at least one purchase order on September 13, 2013 for 1,824 light fixtures. Counterclaims in Intervention ¶ 21; 9/13/13 Purchase Order, attached as Exhibit C to Counterclaims in Intervention.

Second, in Section 2.1 of the Master Standard Buying Agreement, North Tech granted Lowe's a license to use any patents held by North Tech and its parents, subsidiaries and affiliates. Counterclaims in Intervention ¶¶ 25-26. North Tech also released Lowe's from all claims based on North Tech's (and its parents, subsidiaries and affiliates) patents. Counterclaims in Intervention ¶ 28.

Third, the Master Standard Buying Agreement included an express obligation to act in good faith. Counterclaims in Intervention ¶ 30 (citing Master Standard Buying Agreement § 15.14). Section 15.14 states: "Each party agrees that, in its respective dealings with the other party under or in connection with this Agreement, it will act in good faith." Counterclaims in Intervention ¶ 30.

On October 24, 2013, North Tech and Lowe's amended the Master Standard Buying Agreement (the "Amendment"). Counterclaims in Intervention ¶¶ 22, 31-

32. The Amendment, in relevant part, replaced Section 2.1 of the original Master Standard Buying Agreement with a new, more limited license. Counterclaims in Intervention ¶ 35. This time, North Tech gave Lowe's a license to use its patents (but perhaps not patents belonging to North Tech's parents, subsidiaries and affiliates) in connection with light fixtures supplied by any third-party and conditioned upon North Tech providing defective light fixtures or failing to meet other performance measures. Counterclaims in Intervention ¶¶ 35-36. North Tech alleges that none of those conditions have been triggered. Counterclaims in Intervention ¶¶ 39-41.

At an unidentified time, Lowe's emailed North Tech, indicating that Lowe's would not place further purchase orders with North Tech until the '163 Patent was assigned to North Tech. Counterclaims in Intervention ¶ 60. North Tech further alleges, on information and belief, that Lowe's, at the same time and unbeknownst to North Tech, was negotiating with HeathCo to replace North Tech. Counterclaims in Intervention ¶¶ 58, 62, 65. Beyond just asking HeathCo to provide light fixtures, Lowe's, according to North Tech, also induced HeathCo to design and sell light fixtures that infringed the '163 Patent. Counterclaims in Intervention ¶ 57.

On November 5, 2014, North Tech informed Lowe's that the '163 Patent would not be assigned to North Tech. Counterclaims in Intervention ¶ 63. Two months later, on January 8, 2015, Lowe's emailed North Tech, stating that Lowe's no longer would distribute North Tech products. Counterclaims in Intervention ¶¶

64-65; *see also* 1/8/15 Email, attached as Exhibit 3 to North Tech's Motion to Intervene [50].

## B. Procedural History

On January 23, 2015, Vaxcel commenced this patent infringement action, filing its Second Amended Complaint ("SAC") [37] on July 13, 2015, and alleging that Defendants infringed the '163 Patent. In July and August 2015, Defendants answered the then-operative Second Amended Complaint, asserting defenses and counterclaims that invoked the Master Standard Buying Agreement. Lowe's Companies Answer to SAC [40]; HeathCo Answer to SAC [41]; Lowe's Home Centers Answer to SAC [44]. Vaxcel, of course, is not a signatory to the Agreement. *See* Counterclaims in Intervention ¶ 20.

In response to Defendants' defenses and counterclaims invoking the Master Standard Buying Agreement, on August 31, 2015, North Tech moved to intervene, arguing that Vaxcel and North Tech are separate legal entities, and that a determination of the Agreement's scope and effect would impair North Tech's rights. Motion to Intervene [50]. Over Defendants' objections, this Court granted North Tech's motion to intervene on October 28, 2015. 10/28/15 Minute Order [74].

On November 2, 2015, North Tech filed its Counterclaims in Intervention [92], seeking determinations about the scope of the Master Standard Buying Agreement (Count I) and whether the Agreement is enforceable (Count II). North Tech further alleges that Defendants breached the Master Standard Buying Agreement (Count III); and made affirmative misrepresentations during the course

6

of performance under the Agreement, violating the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 (Count IV).

On December 9, 2015, Vaxcel filed its Third Amended Complaint ("TAC") [106], narrowing this patent infringement dispute. Defendants answered the still-operative Third Amended Complaint on December 28, 2015, again asserting defenses and counterclaims that invoked the Master Standard Buying Agreement. HeathCo Answer to TAC [148]; Lowe's Companies' Answer to TAC [149]; Lowe's Home Centers' Answer to TAC [150].

## III. Analysis

Against this factual and procedural backdrop, Defendants now move to dismiss [108] all four counts of North Tech's Counterclaims in Intervention. This Court addresses each count in turn.

### A. Counts I and II: Declaratory Judgments

In Counts I and II, North Tech seeks two declarations under the Declaratory Judgment Act: that the Master Standard Buying Agreement did not license the '163 Patent to Lowe's or otherwise provide a release (Count I); and that the Agreement is unenforceable for lacking consideration, namely, any price or quantity term (Count II). As discussed below, Defendants respond that there is no controversy under the Declaratory Judgment Act (Subsection 1) and that North Tech received consideration when entering into the Master Standard Buying Agreement (Subsection 2).

### 1. Subject Matter Jurisdiction (Counts I and II)

Pursuant to Rule 12(b)(1), Defendants, mistaking the basis of Counts I and II, first argue that there is no controversy under the Declaratory Judgment Act, 28 U.S.C. § 2201, such that this Court lacks subject matter jurisdiction. Under the Act, North Tech, as the party seeking relief, bears the burden of establishing that the parties have an actual, substantial controversy of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Wisconsin Central, Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008). A signatory's interest in and dispute over the interpretation of its contract can form the basis of an actual controversy. *Barrington Bank & Trust Co. v. Federal Deposition Insurance Corp.*, No. 14-6710, 2015 WL 1888284, at *3 (N.D. Ill. April 24, 2015); *Buckley v. County of DuPage*, No. 88-1939, 1998 WL 832641, at *5 (N.D. Ill. Nov. 23, 1998). That is the case here.

The parties dispute the scope and effect of the Master Standard Buying Agreement. Indeed, Counts I and II of North Tech's Counterclaims in Intervention mirror Defendants' responses and counterclaims to Vaxcel's then-operative Second Amended Complaint and now-operative Third Amended Complaint. All regard whether the Master Standard Buying Agreement releases Defendants from claims based on the '163 Patent and/or licenses Defendants under the '163 Patent. Counts I and II thus are contract claims at bottom. They are not infringement claims under the '163 Patent, contrary to Defendants' argument and citation to *Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333,

8

1345 (Fed. Cir. 2001); and *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1551-54 (Fed. Cir. 1995).

In particular, Defendants, in their Answers to Vaxcel's Third Amended Complaint (which track their Answers to the Second Amended Complaint), respond that the Master Standard Buying Agreement forecloses Vaxcel's patent infringement claims. Defendants first denied Vaxcel's allegation that Vaxcel never licensed the '163 Patent to them:

> **Paragraph No. 12.** Plaintiff Vaxcel has never licensed any Defendant under the '163 Patent and, except as set forth in paragraph 13, Plaintiff Vaxcel has not otherwise authorized any Defendant to practice any part of the '163 Patent.
>
> **Answer.** [Defendant] admits that Plaintiff Vaxcel licensed the Defendants at least as set forth in paragraph 13. [Defendant] denies the remaining allegations of paragraph no. 12.

HeathCo Answer to TAC [148] ¶ 12; Lowe's Companies Answer to TAC [149] ¶ 12; Lowe's Home Centers Answer to TAC [150] ¶ 12. Defendants then deployed the Master Standard Buying Agreement as an affirmative defense:

> Plaintiff's claims are barred in whole or in part by the license and/or release in the Master Standard Buying Agreement dated July 13, 2013 between Lowe's Companies, Inc. and North Tech International Co. Ltd.

HeathCo Answer to TAC [148], Affirmative Defense No. 7; Lowe's Companies Answer to TAC [149], Affirmative Defense No. 9; Lowe's Home Centers Answer to TAC [150], Affirmative Defense No. 7. And each Defendant brought a counterclaim against Vaxcel seeking a declaration that the Master Standard Buying Agreement licensed the '163 Patent and/or released Defendants from all claims based on the '163 Patent. HeathCo Counterclaim to TAC [40] ¶¶ 11-16; Lowe's Companies

9

Counterclaim to TAC [149] ¶¶ 11-16; Lowe's Home Centers Counterclaim to TAC [150] ¶¶ 11-16.

In sum, Defendants have placed the scope and effect of the Master Standard Buying Agreement at issue in this lawsuit in at least three separate ways. *See also* 10/28/15 Hearing Transcript [108-2] at 4 (reaching the same conclusion). Having done so, Defendants cannot now deny that there is a live controversy under the Declaratory Judgment Act over the disputed interpretation of the Agreement.

### 2. Consideration (Count II)

Defendants next argue that Count II should be dismissed because North Tech's own allegations show that Lowe's provided consideration in the Master Standard Buying Agreement. Defendants first point to the Master Standard Buying Agreement's "Statement of Purpose," which asserts that North Tech and Lowe's entered into the Agreement "in consideration … for other good and valuable consideration." Master Standard Buying Agreement, Statement of Purpose. Yet, under North Carolina law, a contract may lack consideration even when faced with contrary assertions in the recitals. *Milner Airco, Inc. of Charlotte, NC v. Morris*, 433 S.E.2d 811, 814 (N.C. Ct. App. 1993); *Superior Performers, Inc. v. Meaike*, No. 13-1149, 2014 WL 1412434, at *7-8 (M.D.N.C. April 11, 2014). Defendants, for their part, cite no contrary case law.

Citing Counterclaims in Intervention ¶¶ 20-21, Defendants also argue that, even if consideration was lacking when the parties executed the Master Standard Buying Agreement on July 22, 2013, Lowe's later supplied consideration by ordering

10

1,824 light fixtures from North Tech on September 13, 2013. At least at this initial stage, this Court cannot conclude that this purchase order undoes the initial absence of consideration.

In another case involving Lowe's and its Master Standard Buying Agreement, in fact, the Court found that the Agreement, without any quantity term, lacked consideration and was unenforceable, despite Lowe's later placing purchase orders. *Berry Floor NV v. LG Sourcing, Inc.*, No. 09-14, 2010 WL 1633173, at *5-6 (W.D.N.C. April 21, 2010). Although the Master Standard Buying Agreement itself was unenforceable, the Court in *Berry Floor* further observed that Lowe's' later purchase orders formed separate contracts that incorporated the Agreement's terms. *Id.* Following this line of reasoning (which Defendants do for the first time in reply) may allow Defendants to deploy the July 22, 2013 purchase order as a partial or complete defense to Count II of the Counterclaims in Intervention, but, for now, the factual allegations and argument from Defendants are too underdeveloped for this Court to entertain and resolve. *See Mitsui Sumitomo Insurance Co., Ltd. v. Moore Transportation, Inc.*, 500 F. Supp. 2d 942, 950-51 (N.D. Ill. 2007) (discussing waiver).

Defendants also cite *Vogler v. Countrywide Home Loans, Inc.*, No. 10-370, 2010 WL 3394034, at *6 (M.D.N.C. Aug. 26, 2010), which dismissed a lack of consideration claim. But that case is distinguishable because the consideration claim there, unlike the one here, did not turn on the absence of material terms in the contract. Instead, the plaintiffs in *Vogler* had received a $259,800 mortgage

11

note from the defendant banks, and, to avoid repayment, the plaintiffs argued, unlike here, that the note lacked consideration because they had no opportunity to bargain. *Id.* at *1, 6. The Court found that the plaintiffs had pled no allegations supporting that argument. *Id.* at *6.

For all of these reasons, Defendants' motion to dismiss Counts I and II of the Counterclaims in Intervention is denied.

### B. Count III: Covenants of Good Faith and Fair Dealing

In Count III, North Tech alleges that HeathCo breached the implied and express covenants of good faith and fair dealing in the Master Standard Buying Agreement. North Tech cites Lowe's' refusal to place further purchase orders until North Tech obtained an assignment of the '163 Patent. Counterclaims in Intervention ¶¶ 60, 80. While allegedly pressuring North Tech, Lowe's also was negotiating with HeathCo in secret to replace North Tech as a supplier and inducing HeathCo to manufacture infringing light fixtures. Counterclaims in Intervention ¶¶ 57-58, 81-82. Defendants respond that Lowe's had both a contractual and a good faith basis for this conduct.

Under North Carolina law, the implied covenant of good faith and fair dealing lives in every contract, and the covenant is breached when one party prevents the other from receiving the benefits of the agreement. *Celgard, LLC v. LG Chem, Ltd.*, No. 14-43, 2015 WL 2412467, at *14 (W.D.N.C. May 21, 2015); *Superior Performers, Inc. v. Ewing*, No. 14-232, 2015 WL 3823907, at *9 (M.D.N.C. June 19, 2015) (citing *Bicycle Transit Authority, Inc. v. Bell*, 333 S.E.2d 299, 305

12

(N.C. 1985)). The Master Standard Buying Agreement expressly codifies the obligation to act in good faith. Counterclaims in Intervention ¶ 30 (citing Master Standard Buying Agreement § 15.14). Relevant here, when a contract affords one party a discretionary power affecting the rights of the other, the covenant requires that this discretion be exercised in a "reasonable manner based upon good faith and fair play." *Dysart v. Cummings*, 640 S.E.2d 832, 836 (N.C. Ct. App. 2007) (internal quotations omitted); *see also Cole v. Wells Fargo Bank, N.A.*, No. 15-39, 2016 WL 737943, at *7 (W.D.N.C. Feb. 23, 2016). For example, the implied covenant of good faith and fair dealing has limited a buyer's contractual discretion when deciding whether to terminate a home purchase agreement based upon certain inspection findings. *Dysart*, 640 S.E.2d at 836-37.

Here, Defendants cannot prevail on either of their arguments at the preliminary motion to dismiss stage. First, Defendants, citing to Section 3.1(c) of the Master Standard Buying Agreement, argue that the Agreement did not create an exclusive relationship between Lowe's and North Tech but instead allowed Lowe's to pursue North Tech's competitors as additional suppliers. Section 3.1(c) states in relevant part:

> Nothing in this Agreement shall … limit the right of Lowe's to purchase products that are similar to or competitive with the Vendor's Products from entities other than Vendor, or to simultaneously offer similar or competitive products for sale.

Counterclaims in Intervention ¶ 24.

Had North Tech's allegations merely shown that Lowe's retained HeathCo as another light fixture supplier, then Defendants' argument may have had merit. But

13

there is more. North Tech's allegations also show, at least at this stage and drawing all reasonable inferences in North Tech's favor, that Lowe's exercised its discretion to place purchase orders in an unreasonable manner, pressuring North Tech to obtain a license of the '163 Patent. Counterclaims in Intervention ¶¶ 60, 80. Contrary to Defendants' argument, these allegations go beyond Section 9.2(f) of the Master Standard Buying Agreement, which just allowed Lowe's to ask North Tech for evidence that it has "appropriate authorizations from any third parties with [relevant] Intellectual Property Rights in or related to the Products." North Tech alleges that Lowe's asked for more than appropriate authorizations here.

Even had North Tech acquiesced to Lowe's' demands, North Tech's allegations further show that Lowe's never intended to keep its end of the bargain. Lowe's instead was negotiating with HeathCo in secret to replace North Tech altogether and also to infringe the '163 Patent (and thus not just provide a similar or competitive product). Counterclaims in Intervention ¶¶ 57-58, 81-82. All these allegations thus create a plausible claim that Defendants' breached their express and implied good faith obligations.

Defendants also argue that the Counterclaims in Intervention and Vaxcel's August 24, 2015 interrogatory responses show that Lowe's had a good faith basis for asking North Tech to assign the '163 Patent. Defendants explain that Lowe's was clarifying ambiguity surrounding North Tech's licenses, which, in turn, affected the scope of the Master Standard Buying Agreement's licensing clause. Yet in making this argument, Defendants not only flip this Court's obligation to draw all

reasonable inferences in North Tech's favor at the motion to dismiss stage, but also impute *ex post facto* from litigation documents a favorable motive onto Lowe's that is not supported by the actual factual allegations at issue. For these reasons, Defendants' motion to dismiss Counts III of the Counterclaims in Intervention is denied.

### C. Count IV: Unfair and Deceptive Trade Practices

In Count IV, North Tech alleges that Defendants violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1. In moving to dismiss, Defendants respond in general terms that North Tech has failed to allege any facts that rise to the level of unfair or deceptive.

To state a claim under the Unfair and Deceptive Trade Practices Act, North Tech must allege that: (1) Defendants committed an "unfair or deceptive" act or practice; (2) the act or practice was in or affecting commerce; and (3) the act was a proximate cause of an injury to North Tech. N.C. Gen. Stat. § 75-1.1; *see also Gray v. North Carolina Insurance Underwriting Association*, 529 S.E.2d 676, 681 (N.C. 2000). Only the first element is at issue here. An act is "unfair" when the act "offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Gray*, 529 S.E.2d at 681 (quoting *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981)). An act is "deceptive" when it has the "tendency to deceive." *Gray*, 529 S.E.2d at 681 (citing *Marshall*, 276 S.E.2d at 403).

15

Making affirmative misrepresentations during the course of a supplier relationship can be unfair and deceptive. In *Celgard*, 2015 WL 2412467, at *12-13, also a case involving both patent infringement and unfair and deceptive trade practices claims, the Court denied the motion to dismiss based upon allegations that the defendant (LG Chem, Ltd.) promised to make the plaintiff (Celgard, LLC) its exclusive base film supplier to induce Celgard to increase its production capacity and discount its prices, while also negotiating with another company in secret to replace Celgard.[1] The Court also credited Celgard's allegations that LG Chem, wanting to avoid its contractual commitment to purchase the majority of base film from Celgard, misrepresented the market price of comparable separator material as having fallen by over 50 percent. *Id.* at *13.

Like the misrepresentations and the secret negotiations to replace the plaintiff-supplier in *Celgard*, here, North Tech alleges that Lowe's refused to place any additional orders until North Tech obtained an assignment of the '163 Patent, while simultaneously negotiating with HeathCo to replace North Tech. Counterclaims in Intervention ¶¶ 60, 62. North Tech alleges that, while being replaced, Lowe's:

- never informed North Tech of its negotiations with HeathCo;

- never gave North Tech notice of termination under the Master Services Buying Agreement; and

- never informed North Tech that Lowe's had asked HeathCo to design and sell fixtures nearly identical to North Tech's in appearance and function.

---

[1] Base film is used to create battery separator and also used in the production of lithium-ion batteries. *Celgard*, 2015 WL 2412467, at *1.

Counterclaims in Intervention ¶¶ 57-58. Drawing all reasonable inferences in favor of North Tech as the non-moving party (as this Court must do), these allegations show that Lowe's never intended to place additional purchase orders with North Tech, but instead intended to create false leverage to induce North Tech to obtain an assignment of the '163 Patent. Defendants dispute the merits of drawing this inference, but factual disputes are not meant to be resolved at the motion to dismiss stage.

For all of these reasons, Defendants' motion to dismiss Count IV of the Counterclaims in Intervention is denied.

## IV. Conclusion

Defendants' motion to dismiss [98] is denied. On or before 5/17/2016, Defendants shall answer North Tech's Counterclaims in Intervention.

Dated: April 25, 2016

Entered:

United States District Judge